CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 16 2017

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **PIPER A. ROUNTREE,** | ) | **CASE NO. 7:15CV00220** |
| **Plaintiff,** | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| **HAROLD CLARKE, ET AL.,** | ) | **By: Glen E. Conrad** |
| | ) | **Chief United States District Judge** |
| **Defendant(s).** | ) | |

Piper A. Rountree, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. She contends that prison officials have refused to approve yoga mats as personal faith objects so she can possess and use such a mat to practice yoga in her cell according to her Buddhist religious beliefs. After review of the record, the court concludes that the defendants are entitled to summary judgment.

## Background

Rountree is incarcerated at Fluvanna Correctional Center for Women ("FCCW"). In the second amended complaint (hereinafter "complaint"),[1] She states that even before her incarceration, she became an adherent of Buddhism and took Dharma vows, including a vow to live a healthy lifestyle through exercise, walking, and practicing yoga. Rountree asserts:

> Generally, the Buddhist practice strongly emphasizes maintaining a regimen that is *daily* in nature. The daily practices include meditating, studying, living, and practicing the Buddhists' tenets, and practicing yoga. For Buddhists, it is of paramount importance that these practices are adhered to on a daily rather than

[1] Defendants have moved for summary judgment on Rountree's second amended complaint (ECF No. 39). Rountree now moves for leave to submit a third amended complaint (ECF No. 58). This third amended complaint would merely add the current FCCW warden, Jeffrey Dillman, as a defendant to Rountree's claims for monetary damages and prospective relief. Because the court herein determines that Rountree has not established any material fact in dispute so as to preclude summary judgment, the court will deny her motion for leave to amend as untimely filed and futile. See Fed. R. Civ. P. 15(a).

> weekly or sporadic basis. Since the point of the practices is to create or maintain an optimally healthy mindset, physical state, and habits, only daily and repeated practice will create and maintain the optimal health and mindset sought. . . .
>
> Part of [Rountree's] sincerely held religious beliefs include[s] this daily practice of the yoga *asanas. Asanas* are the physical posture of yoga taken for the spiritual and meditative purpose. This practice usually takes a total of 2 hours to perform, at intervals or in a continuous, focused meditative session.

(Compl. 9, ECF No. 39) (emphasis in original). Rountree contends that yoga mats are necessary for the safe and correct practice of yoga.

> The non-slip, cushioned, unique design of . . . yoga mats allow[s] silent ease of often rapid flowing moves. Where the Buddhist's practice also includes extended seated meditation, doubled and rolled-up yoga mats [as a substitute for Buddhist meditation cushions called *zafus*] allow for positioning the body in the correct [upright] posture without pain.

(Id.)

Rountree complains that the VDOC will not allow her to possess a yoga mat in her own cell to perform daily yoga maneuvers and that doing yoga exercises and mediation poses without a yoga mat has caused her pain and injuries. Rountree asserts that she cannot properly practice her Buddhist beliefs.

> Without daily use of the yoga mat, she cannot perform the complete set of yoga postures, cannot hold correct alignment without severe pain and injury, and cannot practice or maintain[ ] the required breath and mind focus or control. Furthermore, without the silenced cushioning, the practice tends to become a point of noisy contention between roommates, leading to a violation of her first Dharma vow. Without such yoga mat for meditation, she's forced to sit in either a crunched position on her bed (because of overhead obstructions), or she faces violating sanitary standards and prison ordinances for using her blankets on the floor. Extensive prostrations have become painful and noisy without the cushioning.

(Compl. 13.)

Virginia Department of Corrections ("VDOC") Operating Procedures require that the Faith Review Committee ("FRC") must review and approve any property item requested for an

inmate's religious practices. The FRC is a panel of representative VDOC staff who receive referrals from Facility Unit Heads on requested faith property and practices, and determine whether a requested property item, practice, or accommodation should or should not be approved in accordance with VDOC procedures and operational concerns. The stated purpose of this centralized approval of inmate faith items is to maintain "consistency for offender accommodation of religious property and practices" throughout the VDOC. OP 841.3(IV)(D). Attachment 5 of OP 841.3 lists individual faith items already approved by the FRC for an inmate to possess in cell for religious practices. To request any exception to the operating procedure, an inmate must complete a "Request for Approval of Faith Object" form through the Facility Unit Head, to the FRC for review. All FRC decisions must also be reviewed and approved by the Chief of Corrections Operations and the Corrections Operations Administrator before implementation.

The FRC list of approved faith items is particularized. For example, the FRC reviewed prayer rugs, found them to be widely recognized as necessary and integral to the practice of certain religions, and approved them for addition to the list of individual faith property items. An approved prayer rug maybe no larger than 48" x 30" and must normally be stored in the inmate's locker when not in use for religious observance. Rountree possesses an approved prayer rug in her cell.[2]

The FRC also reviewed yoga mats and determined that they were not considered required articles of faith in the practice of Buddhism. Nevertheless, the FRC approved "integral yoga mats" as "communal property" to be "stored in recreation area" for inmates to use in activities, including religious practice and rituals. OP 841.3, Attach. 5. The FRC did not approve yoga

[2] See Rountree v. Clarke, 7:11CV00572 (W.D. Va. Mar. 23, 2015) (consent order regarding Rountree's request to conduct Buddhist prayers on her individual prayer rug in her cell during count procedures).

mats for individual inmate possession in cell because of storage, sanitation, and security concerns.

The defendants present the affidavit of Elisabeth Thornton, the former Corrections Operation Administrator for the VDOC, identifying several security and safety concerns posed by allowing an inmate to possess a yoga mat in cell. An inmate could use a yoga mat (also known as a sticky mat) to better maintain footing and balance when physically resisting security staff, to block OC spray, to hinder a canine, and to act as a buffer between the inmate and security staff during an incident. An inmate could use a yoga mat to hide contraband easily within the folds, thus slowing staff's search ability and creating a safety concern for inmates and staff. A standard yoga mat (68" x 24" x ¼"),[3] rolled up, could function as a two-foot-long club of 4" to 5" in diameter and be used as a weapon. Also, if one inmate were allowed to use a yoga mat in cell, it would cover a majority of the shared space and interfere with a cell mate's access to the bunk area, possibly leading to arguments or physical altercations between cell mates. Finally, yoga mats can stick to the floors if not cleaned regularly. They are porous and hold sweat, oils, and dead skin from users.

---

[3] In her second amended complaint, Rountree stated that the yoga mat she desired to keep in her cell for her religious practice measured 2' x 5' x 14", considerably thicker than the standard yoga mat. In later submissions, Rountree has clarified that she made typographical errors in stating the desired measurements and that a one-quarter-inch-thick mat, 24 inches in width, and 68 inches in length, would suffice for her needs.

Because of these security and sanitation concerns, the FRC did not approve yoga mats as individual faith objects, and Rountree may not possess and store a yoga mat in her cell. She can and does check out a yoga mat from staff for use in her religious yoga practice.[4]

The defendants offer evidence that Rountree's prison grievance records do not include any regular grievances from her, reporting that she had suffered physical injuries as a result of practicing yoga without being allowed to use a yoga mat. Similarly, they offer evidence that Rountree's prison medical file does not include any medical complaints, medical treatment forms, medical documents, or other medical records documenting any report from Rountree of particular injuries she sustained from practicing yoga without a yoga mat.

Rountree asserts, generally, that Buddhists are treated differently than other religious groups at FCCW. Muslims may possess a prayer rug in cell as a personal faith object, and other faith groups may possess individual faith objects. Other faith groups at FCCW are allegedly allowed "approximately 17 hours per week of group fellowship to practice their faith." (Compl. 12.) By comparison, Buddhists are approved to meet once per week in a community setting where they can use yoga mats, but cannot possess personal yoga mats in their cells

In this civil rights action, Rountree sues the VDOC director, a regional director and an assistant regional director, several FRC members, and two former FCCW wardens for the policies and practices described. She states that the defendants' actions have violated and continue to violate her rights under the First, Eighth, and Fourteenth Amendments and RLUIPA,

---

[4] When and where Rountree may use a communal yoga mat is not clear from the record. The defendants imply that Rountree may check out and use a yoga mat in a communal area of the prison every day. Rountree states, however, that this checkout practice has changed over time. Her submissions state that for years, FCCW inmates have been allowed to check out a yoga mat on a quarterly basis, for use in large groups or for "in-room use" at "all hours of every day and night." (Pl. Resp. 10, ECF No. 56.) She complains that a Buddhist's ability to check out a communal yoga mat depends on availability of mats and the number of other inmates attempting the same activity. Elsewhere in her submissions, Rountree states that Buddhists' yoga mats are stored in the chaplain's closet and may only be used during the weekly Buddhist group meeting time.

and she seeks monetary, declaratory, and prospective relief.[5] The defendants have filed a motion for summary judgment, supported by affidavits, and Rountree has responded, making the motion ripe for consideration.[6]

## II. Discussion

### A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory assertions unsupported by factual matter to defeat a motion for summary judgment, however. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

---

[5] The court previously dismissed Rountree's claims for monetary damages under RLUIPA. See Rountree v. Clarke, No. 7:15CV00220, 2016 WL 324491 (W.D. Va. Jan. 26, 2016). Her § 1983 claims for monetary damages remain before the court, however.

[6] Rountree has engaged in discovery. The magistrate judge previously sustained the defendants' objections to some discovery requests and denied Rountree's motion to compel additional discovery responses. (ECF No. 40.) Rountree has filed a motion for reconsideration (ECF No. 43) of the denial of her motion to compel, but the court finds no error and will deny her motion accordingly.

### B. No First Amendment Claim

Under the Free Exercise Clause of the First Amendment, prison officials must reasonably accommodate an inmate's exercise of his sincerely held religious beliefs. O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987). To prove a violation of this right, an inmate must first state facts sufficient to show that the challenged prison regulation substantially burdens his right to free exercise of a sincerely held religious belief. Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). In this context, a "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981). "'[A]t a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice.'" Dellinger v. Clarke, 172 F. Supp. 3d 898, 902 (W.D. Va. Mar. 22, 2016) (quoting Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007) (alteration in original). Thus, "[n]o substantial burden occurs if the government action merely makes the 'religious exercise more expensive or difficult' or inconvenient, but does not pressure the adherent to violate her religious beliefs or abandon one of the precepts of her religion." Rountree v. Clarke, No. 7:11CV00572, 2015 WL 1021286, at *7 (W.D. Va. Mar. 9, 2015) (quoting Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007) (unpublished)).

Because "courts are ill equipped to deal with the increasingly urgent problems of prison administration," they must defer to the expertise of prison officials in crafting policies addressing those problems, such as security, discipline, and efficient use of limited resources; therefore, a prison regulation that substantially burdens inmates' religious practices is, nevertheless, "'valid if it is reasonably related to legitimate penological interests.'" Lovelace, 472 F.3d at 199

(quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). This determination turns on a four-factor test: (1) "whether there is a valid, rational connection between the prison regulation" and the asserted government interest; (2) whether Rountree was "deprived of all forms of religious exercise or [was] able to participate in other observances of [her] faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any obvious, easy alternatives to the challenged regulation." Id. at 200 (internal quotation marks and citation omitted).

The defendants do not challenge the sincerity of Rountree's Buddhist beliefs. Rather, they argue that her First Amendment claims fail under the substantial burden requirement and the four-factor Turner test. The court agrees.

Rountree simply fails to marshal evidence that not having a yoga mat authorized as an individual faith object to use and store in her cell has pressured her to abandon or violate her Buddhist beliefs. By her own account, she can and does practice many yoga moves and positions in her cell without a yoga mat. While she alleges difficulty holding positions as well, as comfortably, as quietly, or as long as she would like without a yoga mat, she can perform these moves. When concerned about sanitation or cushioning during mediation, she can use her prayer rug. Moreover, at least once per week or more, Rountree can practice yoga on a yoga mat checked out from the appropriate staff member and returned for storage in a communal area when she is finished.

Rountree claims to have received medical treatment for sprained wrists and an unspecified muscle injury incurred while doing yoga without a mat. She offers no explanation for the absence of any mention of these injuries in her medical and grievance records, however. She also offers no medical evidence that the alleged injuries were caused by the lack of a mat

rather than by the yoga moves themselves. Accordingly, the court finds no genuine issue of material fact in dispute on which Rountree could prove that the defendants' failure to classify yoga mats as individual faith objects has substantially burdened her religious exercise.

Moreover, the defendants have established that the FRC's limited approval of yoga mats—for communal use, but not for individual in cell possession—is rationally related to legitimate penological goals under the four-factor Turner standard. First, keeping yoga mats as communal objects under prison staff supervision allows for frequent inspection and cleaning, limits cell mate disagreements over in cell space and activities, and prevents inmates in cell from using the mats to hide contraband or resist security staff. Thus, the FRC's ruling addresses security and sanitation concerns with little impact on staff or prison resources. Second, even without a mat in her cell, Rountree may practice her religious beliefs, including yoga exercise and meditation moves. Finally, Rountree offers no obvious alternative to the FRC's ruling that would address the same concerns to the same extent. The court concludes that the defendants are entitled to summary judgment on Rountree's First Amendment claim.

**C. No RLUIPA Claim**

"RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." Miles v. Moore, 450 F. App'x 318, 319 (4th Cir. 2011) (unpublished per curiam) (citing 42 U.S.C. § 2000cc-1(a)). A RLUIPA analysis consists of two steps. First, the inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious exercise." Incumaa v. Stirling, 791 F.3d 517, 525 (4th Cir. 2015). As in the First Amendment analysis, "a substantial burden on religious exercise" occurs when the challenged governmental action "'put[s] substantial pressure on an adherent to

modify his behavior and to violate his beliefs.'" Lovelace, 472 F.3d at 187 (quoting Thomas, 450 U.S. at 718).

If the inmate proves that there is a substantial burden on his religious practice, then "the burden shifts to the government to prove its policy furthers a compelling governmental interest by the least restrictive means." Incumaa, 791 F.3d at 525. "'The least-restrictive-means standard . . . requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party.'" Jehovah v. Clarke, 798 F.3d 169, 177 (4th Cir. 2015) (quoting Holt v. Hobbs, 135 S. Ct. 853, 864 (2015)). In applying the RLUIPA standards, courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter v. Wilkinson, 544 U.S. 709, 723 (2005).

Rountree's RLUIPA claim, like her First Amendment claim, fails for lack of evidence that the FRC's refusal to approve yoga mats as individual faith objects imposes a substantial burden on Rountree's religious practice. As discussed, she can and does engage in yoga exercise and mediation poses in her cell, as well as on communal yoga mats checked out from staff. While she desires the comfort and support of a yoga mat, she offers no evidence that lack of a personal mat in her cell has substantially pressured her to violate or abandon her religious practice.

Moreover, the defendants' evidence establishes that the FRC's ruling on yoga mats furthers compelling penological interests in maintaining prison safety and sanitation by the least restrictive means. Requiring all individual faith objects for VDOC inmates to be approved by the centralized "FRC ensures VDOC-wide 'consistency for offender accommodation of religious

property and practices based on legitimate facility security and operational concerns.'" (Mem. Supp. 3, ECF No. 51) (quoting OP 841.3(IV)(D). Thus, the FRC's ruling also furthers a compelling interest in uniformity of policy at any VDOC prison where an inmate might seek to possess a yoga mat for religious reasons.

For the stated reasons, the court finds no genuine issue of material fact on which Rountree could prove her RLUIPA claim. Therefore, the court will grant summary judgment for the defendants on this claim.

### D. No Equal Protection Claim

Rountree also asserts that the prison's regulation of yoga mat use violates her rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted). Thus, to prove an equal protection claim, litigants "'must first demonstrate that [they] ha[ve] been treated differently from others with whom [they are] similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Id. (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Even if an inmate establishes these factors, the challenged regulation survives constitutional challenge if it "serves a legitimate state interest and whether the challenged classification is rationally related to it." Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989).

Rountree contends that FCCW policies violate equal protection principles because they treat her, as a Buddhist, differently than inmates of other faith groups in both individual and

group religious practices. She asserts, generally, that other faith groups may possess individual faith objects, but offers only one example: a Muslim inmate's prayer rug. As stated, Rountree is allowed to possess a prayer rug in her cell. Thus, in this respect, Rountree is not treated in a disparate or unequal fashion. She complains, however, that the prayer rug is not the equivalent of a yoga mat. The court agrees. The record indicates that a yoga mat is larger and stiffer than a prayer rug, with different potential uses to thwart security officers' efforts to maintain or restore order. In this respect, Rountree is not similarly situated to Muslim inmates or other faith groups whose individual faith objects do not pose the same security concerns in cell that a yoga mat poses.

Rountree also complains generally that the Buddhist faith group is granted only one weekly meeting time to do yoga together, while other faith groups are allowed multiple meeting times each week, related to their faiths. While she provides few details in support of this assertion, she is apparently referring to Christian groups that meet for praise dancing, music groups, or Bible study.[7] Perhaps Rountree could show how the group yoga activity that she wants to participate in multiple times per week is similarly situated to the activities granted to the other faith groups, although she has not done so here. Her equal protection claim fails nevertheless, because she has not demonstrated that these religious activity differences are the result of prison officials' purposeful discrimination against inmates who practice Buddhism.

Most importantly, the restrictions on yoga mats are rationally related to legitimate prison concerns under the Turner standard. As individual faith objects used in the inmate's cell, they present the security and cleanliness issues already discussed. The court can also conceive of space and staffing difficulties that could legitimately influence officials' decisions about requests

[7] Rountree has offered no evidence that group worship or yoga with fellow Buddhist believers is a tenet of her belief system.

for more group yoga mat time. For the reasons stated, Rountree's evidence does not present an equal protection claim here, and the court will grant the defendants' motion accordingly.

**E. No Eighth Amendment Claim**

Rountree contends that FCCW's policies on yoga mats violate her Eighth Amendment rights. Specifically, she argues that being without her yoga mat for religious practice for several years already and for the remainder of her life sentence is cruel and unusual punishment, "antithetical to human dignity by today's standards." (Pl. Resp. 27.)

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "[T]he Constitution does not mandate comfortable prisons," however, and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981). It is well established that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." See Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks and citations omitted).

To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

Rountree has not shown that any VDOC official wantonly inflicted unnecessary pain on her by regulating her use of yoga mats. These regulations do not deprive Rountree of any

necessity for life, such as food, shelter, or medical care, nor have they caused her any serious injury. Because she thus fails to state any Eighth Amendment claim here, the court will grant the defendants' motion.

**Conclusion**

For the reasons stated herein, the court concludes that the defendants are entitled to summary judgment on all of Rountree's constitutional and RLUIPA claims and will grant their motion accordingly. An appropriate order will issue this day.

The clerk will send copies of this memorandum opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

ENTER: This 14th day of February, 2017.

Chief United States District Judge